Matthew D. Resnik (Bar No. 182562)
M. Jonathan Hayes (Bar No. 90388)
Roksana D. Moradi-Brovia (Bar No. 266572)
**RHM LAW LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
matt@RHMFirm.com
jhayes@RHMFirm.com
Roksana@RHMFirm.com

*Proposed Attorneys for Debtor*
BKR LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>BKR LLC<br>Dba Ramada Bakersfield North,<br><br>Debtor and Debtor-in-Possession. | Case No. 1:26-bk-10969-MB<br><br>Chapter 11<br><br>**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM BASIS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES FAIR AND MICHAEL CRANE IN SUPPORT THEREOF**<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 303<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91367 |

**TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE; SECURED CREDITORS, NEW OMNI BANK, SBA, AND CITY OF BAKERSFIELD AND THEIR ATTORNEYS; THE UNITED STATES TRUSTEE; CREDITORS AND ALL PARTIES IN INTEREST:**

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** .... 4
I. STATEMENT OF RELIEF SOUGHT .... 4
II. OVERVIEW OF THE DEBTOR'S OPERATIONS .... 6
III. SUMMARY OF THE ASSETS OF THE ESTATE AND SECURED CREDITORS .... 7
*A. The Debtor's assets* .... 7
*B. The secured creditors and obligations.* .... 7
*C. The Debtor's profit and loss for the January – March 2026 period.* .... 8
IV. PROPOSED USE OF CASH COLLATERAL .... 8
V. DISCUSSION .... 9
*A. The Court should authorize the Debtor's use of the Cash Collateral.* .... 9
*B. The secured creditors' interests are adequately protected.* .... 10
*C. In determining adequate protection, the Court should promote reorganization.* .... 12
**DECLARATION OF JAMES FAIR** .... 13
**DECLARATION OF MICHAEL CRANE** .... 16

**Cases**

*Mbank Dallas, N.A. v. O'Connor* (*In re O'Connor*), 808 F.2d 1393, 1397 (10th Cir. 1987) .... 10, 12
*McCombs Properties VI, Ltd. v. First Texas Savings Association* (*In re McCombs Properties VI, Ltd.*), 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988) .... 11
*Pistole v. Mellor* (*In re Mellor*), 734 F.2d 1396, 1400 (9th Cir. 1984) .... 10
*United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988) .... 11

**Statutes**

11 U.S.C. §363 .... 4
11 U.S.C. Section 363(c)(1) .... 10

11 U.S.C. Section 363(c)(2) .......... 10
Section 506(a) .......... 11

**Exhibit List**

| | |
|---|---|
| Exhibit A | Cash Flow Budget |
| Exhibit B | Form F4001-2 Stmt Finance |
| Exhibit C | Deeds of trust, judgment |
| Exhibit D | Profit & Loss Statement March 2026 and Ytd |

BKR LLC, dba Ramada Bakersfield North, Debtor and Debtor-in-Possession ("DIP") hereby moves the court for an emergency order approving the use of cash collateral for 14 days and setting a hearing to consider the further use of cash collateral, pursuant to 11 U.S.C. §363. The Debtor filed its Chapter 11 case on May 5, 2026.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF RELIEF SOUGHT

As virtually all of the Debtor's revenue is hotel rent, which is cash collateral, it cannot use that revenue without prior permission of the court. The Debtor requests that the court conduct a preliminary hearing as quickly as possible as set forth in Rule 4001(b)(2) and enter its order permitting the Debtor to use approximately $86,000 of cash collateral for the period May 6, 2026 through May 23, 2026, on the terms and conditions set forth below, and as set forth in the cash flow projections (the "Budget"). *See* **Exhibit "A."**

The Debtor also requests that the Court set a further preliminary hearing in roughly 14 days to permit the consideration of further use of cash collateral after the initial approval.

Within the first 17-days of this case (May 6, 2026 through Saturday May 23, 2026), the Debtor must pay the following necessary expenses to avoid immediate and irreparable harm.

| | | Week 1 | Week 2 | Week 3 |
|---|---|---|---|---|
| | | 5/3/2026 | 5/10/2026 | 5/17/2026 |
| | **Beginning Balance** | 31,000 | 75,167 | 87,460 |
| | | | | |
| | **Projected Gross Receipts** | 51,828 | 51,828 | 51,828 |
| | | | | |
| **Vendor** | **Expense** | | | |
| Payroll | Labor & Labor Processing | | | 28,000 |
| DirectTV | Cable Television | | 988 | |

| | | | | |
|---|---|---|---|---|
| US Foods | Breakfast Supplies | 3,600 | | |
| Golden Malted | Breakfast Waffle Station | | 375 | |
| Spectrum Enterprise | Guest Internet/Telephone | 750 | | |
| Verizon | Office Internet | | 181 | |
| B.I.T.S. IT Solutions | IT Support | | | |
| Western NRG | Wifi Management | | | 244 |
| M3 Accounting | Accounting Systems | | | 455 |
| HD Supply | Guest Room Supplies/Cleaning/Maint. | | 3,000 | |
| Booking.com | Travel Agent Commissions | | | 6,000 |
| Expedia | Travel Agent Commissions | | | 1,600 |
| SRS Communications | Phone IT Support | | | 299 |
| Elavon Merchant Services | VS/MC/DS Credit Card Processing | | | |
| American Express Merchant Services | Amex Credit Card Processing | | | |
| Kone Elevataor | Elevator Service | | 1,230 | |
| Tel-Tech | Alarm Monitoring | | 105 | |
| JL Services | Equipment Rental | 396 | | |
| City of Bakersfield | Trash Removal | 797 | | |
| PG&E | Electric | | 8,884 | |
| SoCal Gas | Gas | | | 1,855 |
| California Water Service | Sewer | 1,059 | | |
| California Water Service | Water | 1,059 | | |
| Ramada Franchising LLC | Franchise Fees | | | |
| Luminous Hotel Management | Management Fees | | | |
| City of Bakersfield | TOT Tax | | 17,740 | |
| Futuristic Underwriters/First Insurance | Insurance | | 7,032 | |
| New Omni Bank | Debt Service | | | |
| SBA | Debt Service (2) | | | |

| | | | | |
|---|---|---|---|---|
| | | | | |
| | **Total Expenditure** | 7,661 | 39,535 | 38,453 |
| | | | | |
| | **Ending Cash Balance** | 75,167 | 87,460 | 100,835 |

The Debtor expects revenue collections of approximately $150,000 in the next three weeks for a net gain in cash on hand of approximately $64,000.

Attached as **Exhibit "B"** and incorporated herein is the Statement Regarding Cash Collateral or Debtor in Possession Financing [FRBP 4001; LBR 4001-2].

## II. OVERVIEW OF THE DEBTOR'S OPERATIONS

Ramada Bakersfield North is a select-service hotel property operating under the Ramada brand, a franchise of Wyndham Hotels & Resorts. The franchise agreement was entered into between the Debtor and Ramada Worldwide Inc. on October 7, 2020. The franchise agreement was entered into between the Debtor and Ramada Worldwide Inc. on October 7, 2020. Its term is 15 years with no renewal rights or options to either side.

The hotel provides short-term lodging accommodations and related guest services to business, leisure, and transient travelers in the Bakersfield market. The property consists of guest rooms, common areas, and standard hotel amenities typical of a nationally branded select-service lodging facility, which may include complimentary breakfast service, parking, internet access, and other guest conveniences. Revenue is primarily derived from room rentals, with ancillary income generated from incidental guest services.

The hotel operates in a competitive regional market driven by commercial, industrial, and transient travel demand, including activity related to agriculture, energy, logistics, and regional business travel.

The property relies on brand affiliation, third-party booking channels, and direct reservations to generate occupancy and revenue.

Operations include front desk services, housekeeping, maintenance, and general

hotel management functions. The Debtor has 15 employees, none of which are insiders of the Debtor. The business is subject to typical hospitality industry risks, including fluctuations in occupancy, average daily rate (ADR), seasonal demand, labor costs, and competition from other lodging providers in the area.

The hotel is managed by Luminous Hotel Management, LLC, 410 Holiday Ct. Warrenton, VA 20187 ("Luminous"). See Declaration of James Fair below. The contract with Luminous began as of Jan 1, 2026 and has a term of two years. It has two options to extend the term for two years. Neither the Debtor nor any of its insiders have any ownership interest in Luminous. Luminous is managed by James Fair and Neha Jadhav.

## III. SUMMARY OF THE ASSETS OF THE ESTATE AND SECURED CREDITORS

*A. The Debtor's assets*

The Debtor has the following tangible assets:

| Asset | Value |
|---|---|
| Bank Accounts/Cash on Hand | $31,000 |
| Account Receivables | $100,000 |
| Furniture, equipment & Fixtures (included in the value of the real property) | |
| Hotel building (owned by the Debtor) including the Ramada hotel operations | $7 million |
| **Total:** | **$7,131,000** |

The Debtor purchased the real property and the Hotel property on November 16, 2020 $6,825,000. The purchase was funded by two loans from New Omni Bank totaling approx $5,680,000.

*B. The secured creditors and obligations.*

The Debtor believes that the following creditors have liens on cash collateral:

| | Creditor | Earliest Lien date | Claim Amount | Lien |
|---|---|---|---|---|
| 1 | New Omni Bank, N.A. | 5/20/2022 (DOT) | $4,395,517 (per Notice of Sale dated 3/18/26) | Real property, all furniture and fixtures, rent |
| 2 | AmPac Tri State CDC Inc. ("SBA") | 10/14/2021 (DOT) | $2,191,000 | Real property, all furniture and fixtures, rent |
| 3 | City of Bakersfield Transient Occupancy Tax ("TOT") | 9/2/2025 (Abstract of Judgment) and 4/3/26 (Personal Property Judgment Lien) | $411,155 | Real property, all furniture and fixtures. Debtor does not concede that the judgment liens attached to future rent. That is being investigated. |

The Debtor is not aware of any other entity asserting a lien on the assets of the estate. The deeds of trust for New Omni and AmPac, and the abstract of judgment for the City of Bakersfield are attached as **Exhibit "C."**

*C. The Debtor's profit and loss for the January – March 2026 period.*

A copy of the Debtor's profit and loss statement for the January – March 2026 period is attached hereto as **Exhibit "D."** The statement was prepared by Luminous.

## IV. PROPOSED USE OF CASH COLLATERAL

The Debtor and its management company proposes that it use the Hotel room revenue it receives on a daily basis, i.e., the cash collateral, to pay the allowed operating expenses pursuant to the Budget. The Debtor believes that those expenses represent the expenditures to maintain the business operations.

In order to continue the operation of the Hotel, the Debtor must be authorized to use cash collateral to pay the ordinary and necessary operating expenses. If the Debtor's ability to use cash collateral is interrupted, the Debtor will be unable to pay the necessary

and ordinary expenses required to allow it to keep operating, such as payroll, insurance, taxes, and other industry specific expenses, i.e., the Debtor will fail, and its employees will lose their jobs. The Debtor's business, and the Debtor's prospects for a successful reorganization, will end.

Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the operation of the Hotel, they may fluctuate due to circumstances out of the Debtor's control, such as unanticipated expenses related to payroll and related expenses, insurance, or other emergency expenses. Therefore, the Debtor requests court authority to deviate from the total operating expenses contained in the budget by no more than 15% and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order.

No payments are projected to be made to Michael Crane or Timothy Crane. They have not received any compensation of any kind from the Debtor for at least the last year. No payments have been made of any kind to any insider of the Debtor for at least the last year.

The Debtor will continue to be bound by the terms and conditions set forth in the prepetition agreements except as specifically modified herein or as may be subsequently modified by a confirmed plan of reorganization. This request to use cash collateral shall not constitute a modification of the liens granted to New Omni Bank, N.A, AmPac Tri-State CDC, Inc., or the City of Bakersfield.

## V. **DISCUSSION**

*A. The Court should authorize the Debtor's use of the Cash Collateral.*

As a general matter, a debtor-in-possession is permitted to use property of the estate in the ordinary course of business without the need for notice or a hearing. 11 U.S.C.

Section 363(c)(1). However, a debtor's use of cash collateral is an exception to this general rule. Section 363(c)(2) provides in pertinent part:

> (2) The [debtor in possession] may not use, sell, or lease cash collateral ... unless
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U.S.C. Section 363(c)(2).

Bankruptcy courts have consistently held that it is appropriate for a Chapter 11 debtor to use a secured creditor's cash collateral for a reasonable period of time for the purpose of maintaining and operating its property. *See Mbank Dallas, N.A. v. O'Connor* (*In re O'Connor*), 808 F.2d 1393, 1397 (10th Cir. 1987). In addition, where, as here, the debtor is operating a business, it is extremely important that use of cash collateral be allowed in order to facilitate the goal of reorganization.

The Debtor seeks to use cash collateral based on the attached Budget. The Budget delineates the amount of cash collateral needed to maintain and operate the business. The ability for the Debtor to maintain and operate the business will significantly facilitate the intended goal of this case to reorganize.

As set forth above, if the Debtor's access to the cash collateral is interrupted or ceases, the consequences would be disastrous for the business and the estate. The Debtor would be unable to operate and preserve the business. As a result, the business would shut down making its value as a going concern zero.

*B. The secured creditors' interests are adequately protected.*

Pursuant to §363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the Court determines that the secured creditor is adequately protected. *Pistole v. Mellor* (*In re Mellor*), 734 F.2d 1396, 1400 (9th Cir. 1984). *See also McCombs Properties VI, Ltd. v. First Texas Savings Association* (*In re McCombs Properties VI, Ltd.*), 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).

In ordinary circumstances, a secured creditor is to be protected against a decrease in value which directly affects the secured creditor's interest in its collateral. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988); Section 506(a) of the Bankruptcy Code "limit(s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *McCombs*, supra, 88 B.R. at 266.

The senior lienholder New Omni Bank is secured by a significant amount of equity in the real property and the Hotel. It is owed approximately $4.3 million secured by a building and Hotel easily worth $6.5 to $7.5 million. The Debtor proposes monthly adequate protection payments to New Omni of approximately $32,000 beginning on or about June 1, 2026.

The second priority lienholder, AmPac Tri State CBC Inc. ("SBA"), is owed approximately $1.9 million. It is also protected by some equity in the property and will benefit from the Debtor's monthly payments to New Omni Bank loan each month which will prevent the SBA equity from eroding.

New Omni and the SBA are further protected by the increase in the cash on hand as well as future rent revenues as those continue to be cash collateral during the pendency of the case. See § 552(b)(2).

The City of Bakersfield has a third-priority judgment lien on the real property, and on the personal property identified in the Code of Civil Procedure. The Debtor believes that that lien does not attach to rent but will not argue that issue at this time.

Based on the foregoing, the Debtor believes that the secured creditors are adequately protected.

*C. In determining adequate protection, the Court should promote reorganization.*

In determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In *In re O'Connor*, supra, the Tenth Circuit stated:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end.

*In re O'Connor*, 808 F.2d at 1937.

In order to promote Debtor's reorganization, the court should grant the relief requested herein. The Debtor has demonstrated herein that the use of the cash collateral as proposed by the Debtor will preserve the business for the benefit of this estate and the creditors. Indeed, a successful reorganization depends upon the use of cash collateral as proposed herein.

WHEREFORE, Debtor respectfully requests that the Court enter its Order authorizing it to use cash collateral on the terms and conditions described herein and the exhibits thereto and granting such other and further relief as is just and proper under the circumstances.

Dated: May 6, 2026 **RHM LAW LLP**

**By: /s/ M. Jonathan Hayes**
**Matthew D. Resnik**
**M. Jonathan Hayes**
**Roksana D. Moradi-Brovia**
*Proposed Attorneys for Debtor*
BKR LLC

## DECLARATION OF JAMES FAIR

I, James Fair, declare as follows:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true. I am one of the two managers of Luminous Hotel Management, LLC, 410 Holiday Ct. Warrenton, VA 20187. ("Luminous").

2. Luminous entered into an agreement with the Debtor on January 1, 2026 to "manage, market and operate the Hotel on Owner's behalf" for a period of two years. The contract has two options to extend the term for two years. Neither the Debtor nor any of its insiders have any ownership interest in Luminous.

3. As such Luminous is the "exclusive manager and operator of the Hotel" for that two-year term. As the manager, we work with the Debtor's on-site staff which includes a general manager, and approximately 14 employees. We also frequently interact with the Debtor's member, Michael Crane.

4. Luminous is a full-service management company driven by the belief that teamwork drives success. Our team has 70 years of collective experience in hospitality, and our services encompass asset management, revenue strategy, operations, sales, marketing, finance, and tax planning. We presently manage more than 12 hotels throughout the country including the Debtor.

5. At this time, Luminous is the custodian of the Debtor's books, records, and documents. The Debtor maintains records of its transactions at the Hotel location and through various hotel management software common in the industry. It is the Debtor's practice and procedure to maintain records and to record transactions, acts, and events at or about the time the transaction occurs. The Debtor relies on these records in connection with its business dealings.

6. Ramada Bakersfield North is a select-service hotel property operating under the Ramada brand, a franchise of Wyndham Hotels & Resorts. The hotel provides short-term lodging accommodations and related guest services to business, leisure, and transient travelers in the Bakersfield market. The property consists of guest rooms, common areas, and standard hotel amenities typical of a nationally branded select-service lodging facility, which may include complimentary breakfast service, parking, internet access, and other guest conveniences. Revenue is primarily derived from room rentals, with ancillary income generated from incidental guest services.

7. The hotel operates in a competitive regional market driven by commercial, industrial, and transient travel demand, including activity related to agriculture, energy, logistics, and regional business travel.

8. The property relies on brand affiliation, third-party booking channels, and direct reservations to generate occupancy and revenue.

9. Operations include front desk services, housekeeping, maintenance, and general hotel management functions. The Debtor has 15 employees, none of which are insiders of the Debtor. The business is subject to typical hospitality industry risks, including fluctuations in occupancy, average daily rate (ADR), seasonal demand, labor costs, and competition from other lodging providers in the area.

10. My office prepared the cash flow budget attached hereto as **Exhibit "A"** and I reviewed it. My office also prepared the January, February and March 2026 financial statements for the Debtor and I reviewed them. A copy of the Debtor's profit and loss statement for the March 2026 with year-to-date results is attached hereto as **Exhibit "D."**

11. I believe based on my expertise that in order to continue the operation of the Hotel, the Debtor must be authorized to use cash collateral to pay the ordinary and necessary operating expenses. If the Debtor's ability to use cash collateral is interrupted, the Debtor will be unable to pay the necessary and ordinary expenses required to allow it to keep operating, such as payroll, insurance, taxes, and other industry specific expenses,

i.e., the Debtor will fail, and its employees will lose their jobs. The Debtor's business, and the Debtor's prospects for a successful reorganization, will end.

12. Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the operation of the Hotel, they may fluctuate due to circumstances out of the Debtor's control, such as unanticipated expenses related to payroll and related expenses, insurance, or other emergency expenses.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed this May 6, 2026, at ______________________,Virginia.

By: See next page
James Fair
***Declarant***

i.e., the Debtor will fail, and its employees will lose their jobs. The Debtor's business, and the Debtor's prospects for a successful reorganization, will end.

12. Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the operation of the Hotel, they may fluctuate due to circumstances out of the Debtor's control, such as unanticipated expenses related to payroll and related expenses, insurance, or other emergency expenses.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed this May 6, 2026, at ______________Warrenton, Virginia.

By: ______________________
James Fair
***Declarant***

## DECLARATION OF MICHAEL CRANE

I, Michael Crane, declare as follows:

1. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2. I am one of the two managers of the Debtor, BKR LLC. I have been authorized by the members of the Debtor to work with our bankruptcy counsel and make the necessary decisions with respect to this case.

3. Ramada Bakersfield North is a select-service hotel property operating under the Ramada brand, a franchise of Wyndham Hotels & Resorts. The franchise agreement was entered into between the Debtor and Ramada Worldwide Inc. on October 7, 2020. Its term is 15 years with no renewal rights or options to either side.

4. I was involved personally in the decision to terminate the management company we had previously and hire Luminous Hotel Management, LLC to serve that function. I was introduced to Luminous by a former employee of Wydham/Ramada who had worked there for many years. I interact with James Fair and Neha Jadhav constantly as needed.

5. The Debtor has the following tangible assets:

| Asset | Value |
|---|---|
| Bank Accounts/Cash on Hand | $31,000 |
| Account Receivables (estimated value) | $100,000 |
| Furniture, equipment & Fixtures (included in the value of the real property) | |
| Hotel building (owned by the Debtor) including the Ramada hotel operations | $7 million |
| **Total:** | **$7,131,000** |

6. The Debtor purchased the real property and the Hotel property on November 16, 2020 $6,825,000. The purchase was funded by two loans from New Omni Bank totaling approx $5,680,000. We have had discussions with potential buyers of the Hotel for the past year. We have received offers in the low $6 million range. I believe the Hotel is worth much more than that although I understand that that will depend on the profitability of the business going forward.

7. I believe that the following creditors have liens on cash collateral:

| | Creditor | Earliest Lien date | Claim Amount |
|---|---|---|---|
| 1 | New Omni Bank, N.A. | 5/20/2022 (DOT) | $4,395,517 (per Notice of Sale dated 3/18/26) |
| 2 | AmPac Tri State CBC Inc. ("SBA") | 10/14/2021 (DOT) | $2,191,000 |
| 3 | City of Bakersfield Transient Occupancy Tax ("TOT") | 9/2/2025 (Abstract of Judgment) and 4/3/26 (Personal Property Judgment Lien) | $411,155 |

8. I am not aware of any other entity asserting a lien on the assets of the estate.

9. My brother Timothy Crane and I have not received any compensation of any kind from the Debtor for at least the last year. No payments have been made of any kind to any insider of the Debtor for at least the last year.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed this May 6, 2026, at See next page, New York.

By: ____________________________
Michael Crane
***Declarant***

6. The Debtor purchased the real property and the Hotel property on November 16, 2020 $6,825,000. The purchase was funded by two loans from New Omni Bank totaling approx $5,680,000. We have had discussions with potential buyers of the Hotel for the past year. We have received offers in the low $6 million range. I believe the Hotel is worth much more than that although I understand that that will depend on the profitability of the business going forward.

7. I believe that the following creditors have liens on cash collateral:

| | Creditor | Earliest Lien date | Claim Amount |
|---|---|---|---|
| 1 | New Omni Bank, N.A. | 5/20/2022 (DOT) | $4,395,517 (per Notice of Sale dated 3/18/26) |
| 2 | AmPac Tri State CBC Inc. ("SBA") | 10/14/2021 (DOT) | $2,191,000 |
| 3 | City of Bakersfield Transient Occupancy Tax ("TOT") | 9/2/2025 (Abstract of Judgment) and 4/3/26 (Personal Property Judgment Lien) | $411,155 |

8. I am not aware of any other entity asserting a lien on the assets of the estate.

9. My brother Timothy Crane and I have not received any compensation of any kind from the Debtor for at least the last year. No payments have been made of any kind to any insider of the Debtor for at least the last year.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed this May 6, 2026, at Brooklyn, New York.

By: [signature]
Michael Crane
***Declarant***

# EXHIBIT "A"

# BKR LLC – 13 Week Cash Flow Budget

| | | Week 1 05/03 | Week 2 05/10 | Week 3 05/17 | Week 4 05/24 |
|---|---|---|---|---|---|
| | Beginning Balance | $31,000 | $75,167 | $87,460 | $100,835 |
| | | | | | |
| | Projected Gross Receipts | $51,828 | $51,828 | $51,828 | $41,462 |
| **Vendor** | **Expense** | | | | |
| ADP | Labor & Labor Processing | | | $28,000 | |
| DirectTV | Cable Television | | $988 | | |
| US Foods | Breakfast Supplies | $3,600 | | | $3,600 |
| Golden Malted | Breakfast Waffle Station | | $375 | | |
| Spectrum Enterprise | Guest Internet/Telephone | $750 | | | |
| Verizon | Office Internet | | $181 | | |
| B.I.T.S. IT Solutions | IT Support | | | | $800 |
| Western NRG | Wifi Management | | | $244 | |
| M3 Accounting | Accounting Systems | | | $455 | |
| HD Supply | Guest Room Supplies/Cleaning/Maint. | | $3,000 | | |
| Booking.com | Travel Agent Commissions | | | $6,000 | |
| Expedia | Travel Agent Commissions | | | $1,600 | |
| SRS Communications | Phone IT Support | | | $299 | |
| Elavon Merchant Services | VS/MC/DS Credit Card Processing | | | | |
| American Express Merchant Services | Amex Credit Card Processing | | | | |
| Kone Elevataor | Elevator Service | | $1,230 | | |
| Tel-Tech | Alarm Monitoring | | $105 | | |
| JL Services | Equipment Rental | $396 | | | |

| | | **Week 1 05/03** | **Week 2 05/10** | **Week 3 05/17** | **Week 4 05/24** |
|---|---|---|---|---|---|
| City of Bakersfield | Trash Removal | $797 | | | |
| PG&E; | Electric | | $8,884 | | |
| SoCal Gas | Gas | | | $1,855 | |
| California Water Service | Sewer | $1,059 | | | |
| California Water Service | Water | $1,059 | | | |
| Ramada Franchising LLC | Franchise Fees | | | | |
| Luminous Hotel Management | Management Fees | | | | |
| City of Bakersfield | TOT Tax | | $17,740 | | |
| Futuristic Underwriters/First Insurance | Insurance | | $7,032 | | |
| New Omni Bank | Debt Service | | | | |
| SBA | Debt Service (2) | | | | |
| Luminous Hotel Management | Professional Fees | | | | |
| RHM Law LLP | Attorneys Fees | | | | |
| | | | | | |
| | Total Expedenture | $7,661 | $39,535 | $38,453 | $4,400 |
| | | | | | |
| | Ending Cash Balance | $75,167 | $87,460 | $100,835 | $137,897 |
| | | | | | |
| | | | | | |
| | | | | | |

| | | **Week 5 05/31** | **Week 6 06/07** | **Week 7 06/14** | **Week 8 06/21** |
|---|---|---|---|---|---|
| | Beginning Balance | $137,897 | $114,258 | $110,738 | $54,980 |
| | | | | | |
| | Projected Gross Receipts | $43,478 | $43,478 | $34,782 | $43,478 |
| **Vendor** | **Expense** | | | | |
| ADP | Labor & Labor Processing | $25,000 | | $25,000 | |
| DirectTV | Cable Television | | $988 | | |
| US Foods | Breakfast Supplies | | | $3,600 | |
| Golden Malted | Breakfast Waffle Station | | $375 | | |
| Spectrum Enterprise | Guest Internet/Telephone | | $696 | | |
| Verizon | Office Internet | | $181 | | |
| B.I.T.S. IT Solutions | IT Support | | | | $800 |
| Western NRG | Wifi Management | | | $244 | |
| M3 Accounting | Accounting Systems | | | $455 | |
| HD Supply | Guest Room Supplies/Cleaning/Maint. | | $3,500 | | |
| Booking.com | Travel Agent Commissions | $6,000 | | | |
| Expedia | Travel Agent Commissions | $1,600 | | | |
| SRS Communications | Phone IT Support | | | $299 | |
| Elavon Merchant Services | VS/MC/DS Credit Card Processing | $4,500 | | | |
| American Express Merchant Services | Amex Credit Card Processing | $150 | | | |
| Kone Elevataor | Elevator Service | | | | |
| Tel-Tech | Alarm Monitoring | | | $105 | |
| JL Services | Equipment Rental | | $360 | | |
| City of Bakersfield | Trash Removal | | $797 | | |
| PG&E; | Electric | | | $8,884 | |

| | | **Week 5 05/31** | **Week 6 06/07** | **Week 7 06/14** | **Week 8 06/21** |
|---|---|---|---|---|---|
| SoCal Gas | Gas | | | | |
| California Water Service | Sewer | | $1,059 | | |
| California Water Service | Water | | $1,059 | | |
| Ramada Franchising LLC | Franchise Fees | $17,589 | | $21,287 | |
| Luminous Hotel Management | Management Fees | $12,278 | | | |
| City of Bakersfield | TOT Tax | | | $23,634 | |
| Futuristic Underwriters/First Insurance | Insurance | | | $7,032 | |
| New Omni Bank | Debt Service | | $32,983 | | |
| SBA | Debt Service (2) | | | | |
| Luminous Hotel Management | Professional Fees | | $5,000 | | |
| RHM Law LLP | Attorneys Fees | | | | |
| | | | | | |
| | Total Expedenture | $67,117 | $46,998 | $90,540 | $800 |
| | | | | | |
| | Ending Cash Balance | $114,258 | $110,738 | $54,980 | $97,658 |
| | | | | | |
| | | | | | |
| | | | | | |

| | | Week 9 06/28 | Week 10 07/05 | Week 11 07/12 | Week 12 07/19 |
|---|---|---|---|---|---|
| | Beginning Balance | $97,658 | $93,703 | $72,331 | $51,995 |
| | | | | | |
| | Projected Gross Receipts | $33,909 | $41,295 | $41,295 | $41,295 |
| **Vendor** | **Expense** | | | | |
| ADP | Labor & Labor Processing | $25,000 | | $25,000 | |
| DirectTV | Cable Television | | $988 | | |
| US Foods | Breakfast Supplies | | $3,600 | | |
| Golden Malted | Breakfast Waffle Station | | $375 | | |
| Spectrum Enterprise | Guest Internet/Telephone | | $696 | | |
| Verizon | Office Internet | | | $181 | |
| B.I.T.S. IT Solutions | IT Support | | | | |
| Western NRG | Wifi Management | | | $244 | |
| M3 Accounting | Accounting Systems | | | $455 | |
| HD Supply | Guest Room Supplies/Cleaning/Maint. | | $3,500 | | |
| Booking.com | Travel Agent Commissions | | $6,000 | | |
| Expedia | Travel Agent Commissions | | $1,600 | | |
| SRS Communications | Phone IT Support | | | $299 | |
| Elavon Merchant Services | VS/MC/DS Credit Card Processing | | $4,500 | | |
| American Express Merchant Services | Amex Credit Card Processing | | $150 | | |
| Kone Elevataor | Elevator Service | | | | |
| Tel-Tech | Alarm Monitoring | | | $105 | |
| JL Services | Equipment Rental | | $360 | | |
| City of Bakersfield | Trash Removal | | $797 | | |
| PG&E; | Electric | | | $8,884 | |

| | | **Week 9 06/28** | **Week 10 07/05** | **Week 11 07/12** | **Week 12 07/19** |
|---|---|---|---|---|---|
| SoCal Gas | Gas | $1,855 | | | |
| California Water Service | Sewer | | $1,059 | | |
| California Water Service | Water | | $1,059 | | |
| Ramada Franchising LLC | Franchise Fees | | | $19,431 | |
| Luminous Hotel Management | Management Fees | $11,009 | | | |
| City of Bakersfield | TOT Tax | | | | $19,826 |
| Futuristic Underwriters/First Insurance | Insurance | | | $7,032 | |
| New Omni Bank | Debt Service | | $32,983 | | |
| SBA | Debt Service (2) | | | | |
| Luminous Hotel Management | Professional Fees | | $5,000 | | |
| RHM Law LLP | Attorneys Fees | | | | |
| | | | | | |
| | Total Expedenture | $37,864 | $62,667 | $61,631 | $19,826 |
| | | | | | |
| | Ending Cash Balance | $93,703 | $72,331 | $51,995 | $73,465 |
| | | | | | |
| | | | | | |
| | | | | | |

| | | Week 13 07/26 | Total |
|---|---|---|---|
| | Beginning Balance | $73,465 | TOTAL |
| | | | |
| | Projected Gross Receipts | $41,295 | $561,251 |
| **Vendor** | **Expense** | | |
| ADP | Labor & Labor Processing | $25,000 | $153,000 |
| DirectTV | Cable Television | | $2,964 |
| US Foods | Breakfast Supplies | $3,600 | $18,000 |
| Golden Malted | Breakfast Waffle Station | | $1,125 |
| Spectrum Enterprise | Guest Internet/Telephone | | $2,142 |
| Verizon | Office Internet | | $543 |
| B.I.T.S. IT Solutions | IT Support | $800 | $2,400 |
| Western NRG | Wifi Management | | $732 |
| M3 Accounting | Accounting Systems | | $1,365 |
| HD Supply | Guest Room Supplies/Cleaning/Maint. | | $10,000 |
| Booking.com | Travel Agent Commissions | | $18,000 |
| Expedia | Travel Agent Commissions | | $4,800 |
| SRS Communications | Phone IT Support | | $897 |
| Elavon Merchant Services | VS/MC/DS Credit Card Processing | | $9,000 |
| American Express Merchant Services | Amex Credit Card Processing | | $300 |
| Kone Elevataor | Elevator Service | | $1,230 |
| Tel-Tech | Alarm Monitoring | | $315 |
| JL Services | Equipment Rental | | $1,116 |
| City of Bakersfield | Trash Removal | | $2,391 |
| PG&E; | Electric | | $26,652 |

| | | **Week 13 07/26** | **Total** |
|---|---|---|---|
| SoCal Gas | Gas | $1,855 | $5,565 |
| California Water Service | Sewer | | $3,177 |
| California Water Service | Water | | $3,177 |
| Ramada Franchising LLC | Franchise Fees | | $58,307 |
| Luminous Hotel Management | Management Fees | | $23,287 |
| City of Bakersfield | TOT Tax | | $61,199 |
| Futuristic Underwriters/First Insurance | Insurance | | $21,096 |
| New Omni Bank | Debt Service | | $65,966 |
| SBA | Debt Service (2) | | $0 |
| Luminous Hotel Management | Professional Fees | | $10,000 |
| RHM Law LLP | Attorneys Fees | | $0 |
| | | | |
| | Total Expedenture | $31,255 | $508,746 |
| | | | |
| | Ending Cash Balance | $83,505 | $83,505 |
| | | | |
| | Ending Balance with Addback | | $99,214 |
| | | | |

# EXHIBIT "B"

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address
Matthew D. Resnik (Bar No. 182562)
M. Jonathan Hayes (Bar No. 90388)
RHM LAW LLP
17609 Ventura Blvd., Suite 314
Encino, CA 91316
Telephone: (818) 285-0100
Facsimile: (818) 855-7013
matt@RHMFirm.com
jhayes@RHMFirm.com

☐ *Individual appearing without attorney*
☒ *Attorney for:* Debtor

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

In re:

BKR LLC
Dba Ramada Bakersfield North,

Debtor(s).

CASE NO.: 1:26-bk-10969-MB

CHAPTER: 11

# STATEMENT REGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]

DATE:
TIME:
COURTROOM: 303
ADDRESS: 21041 Burbank Blvd.
Woodland Hills, CA 91367

Secured party(ies): New Omni Bank; N.A. AmPac Tri State CDC, Inc; City of Bakersfield

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both. The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| | Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No. (if applicable) |
|---|---|---|---|
| ☐ | (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | | |
| ☐ | (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim"<br>☐ Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law<br>☐ Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | | |

| | | | |
|---|---|---|---|
| *Continued from page 1*<br>☐ Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | | |
| ☐ | (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | |
| ☐ | (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay"<br>☐ Automatic relief from the automatic stay upon occurrence of certain events. | | |
| ☐ | (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐ | (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☐ | (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | | |
| ☐ | (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | |
| ☐ | (ix): "[T]he indemnification of any entity" | | |
| ☐ | (x): "[A] release, waiver, or limitation of any right under § 506(c)"<br>☐ The granting of any lien on any claim or cause of action arising under § 506(c) | | |
| ☐ | (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |
| | **Additional Disclosures Required by LBR 4001-2** | **Page No.:** | **Line No. (if applicable)** |
| ☐ | With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | |
| ☐ | Pay down prepetition principal owed to a creditor | | |
| ☐ | Findings of fact on matters extraneous to the approval process | | |

05/06/2026 M. Jonathan Hayes /s/ M. Jonathan Hayes
*Date* *Printed Name* *Signature*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **STATEMENTREGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) ___________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# EXHIBIT "C"

WFG National Title Company

Jon Lifquist, Assessor-Recorder
Kern County Official Records

JL
5/20/2022
02:49 PM

Recorded Electronically by:
484 WFG National Title Ins Co

DOC #: 222080837

222080837

| Stat Types: 1 | Pages: 20 |
|---|---|
| FEES | 80.00 |
| TAXES | .00 |
| OTHER | 75.00 |
| PAID | 155.00 |

**RECORDATION REQUESTED BY:**
**NEW OMNI BANK, N.A.**
**Real Estate Department**
**1235 South Garfield Avenue**
**Alhambra, CA 91801**

**WHEN RECORDED MAIL TO:**
**NEW OMNI BANK, N.A.**
**1235 South Garfield Avenue**
**Alhambra, CA 91801**

22.362312

**FOR RECORDER'S USE ONLY**

020.110.23.00.5

# DEED OF TRUST

**THIS DEED OF TRUST is dated May 6, 2022, among BKR LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, whose address is 828 REAL ROAD, BAKERSFIELD, CA 93309 ("Trustor"); NEW OMNI BANK, N.A., whose address is Real Estate Department, 1235 South Garfield Avenue, Alhambra, CA 91801 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and New Omni Bank, N.A., whose address is 1235 South Garfield Avenue, Alhambra, CA 91801 (referred to below as "Trustee").**

**CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary,** all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in KERN County, State of California:**

> **See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.**

**The Real Property or its address is commonly known as 828 REAL ROAD, BAKERSFIELD, CA 93309. The Assessor's Parcel Number for the Real Property is 020-110-23-00-5.**

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession

and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in

Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause,

and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will

become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or

registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the

obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment, is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Trustor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of KERN County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Arbitration. Trustor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Deed of Trust or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of**

**any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Trustor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Deed of Trust shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.**

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this

Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means NEW OMNI BANK, N.A., and its successors and assigns.

**Borrower.** The word "Borrower" means BKR LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means NEW OMNI BANK, N.A., its successors and assigns.

**Note.** The word "Note" means the promissory note dated May 6, 2022, **in the original principal amount of $4,200,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means New Omni Bank, N.A., whose address is 1235 South Garfield Avenue, Alhambra, CA 91801 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means BKR LLC.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

**TRUSTOR:**

**BKR LLC**, a California Limited Liability Company

**By:**____________________
**TIMOTHY CRANE, Managing Member of BKR LLC**

**LENDER:**

**NEW OMNI BANK, N.A.**

**X**____________________ Signed in Counterpart
**Authorized Officer**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means New Omni Bank, N.A., whose address is 1235 South Garfield Avenue, Alhambra, CA 91801 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means BKR LLC.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

**TRUSTOR:**

**BKR LLC** , A California Limited Liability Company
Signed in counterpart

**By:**______________________________
**TIMOTHY CRANE, Managing Member of BKR LLC**

**LENDER:**

**NEW OMNI BANK, N.A.**

**X**______________________________
**Authorized Officer** / Eric E-Jade Wu

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

**STATE OF** Ca )
) **SS**
**COUNTY OF** Los Angeles )

On May 11, 2022 before me, Anthony S. Gonzales, Notary Public
(here insert name and title of the officer)

personally appeared **TIMOTHY CRANE,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

ANTHONY S. GONZALES
Notary Public - California
San Bernardino County
Commission # 2399269
My Comm. Expires Apr 27, 2026

**WITNESS my hand and official seal.**

**Signature** [signature] **(Seal)**

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

**STATE OF** CA )
) **SS**
**COUNTY OF** Los Angeles. )

On May 16, 2022 before me, Pui Hang Kwong Notary Public,
(here insert name and title of the officer)
personally appeared Eric E-Jade Wu, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she~~/~~they~~ executed the same in his/~~her~~/~~their~~ authorized capacity(ies), and that by his/~~her~~/~~their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

PUI HANG KWONG
Notary Public - California
Los Angeles County
Commission # 2386756
My Comm. Expires Dec 14, 2025

**WITNESS my hand and official seal.**

**Signature** [signature]

**(Seal)**

# TRUE COPY CERTIFICATION

(Government Code 27361.7)

Glendale, California
Place of Execution (City and State)

I certify under penalty of perjury that this material is a true copy of the original material contained in the document.

See attached Clarity Copy

eRecording Partners Network

5/20/2022
Date

By: [signature]
Signature of Declarant

Julieta Reyes
Type or Print Name

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

**STATE OF** ______________________________ )

) **SS**

**COUNTY OF** ______________________________ )

On __________________________, 20______ before me, ________________________________________,
(here insert name and title of the officer)

personally appeared ______________________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS my hand and official seal.**

**Signature** ________________________________________ **(Seal)**

**(DO NOT RECORD)**

## REQUEST FOR FULL RECONVEYANCE

(To be used only when obligations have been paid in full)

To: ______________________________________, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

______________________________________________________________________.

**Date:** ______________________________ **Beneficiary:** ______________________________

**By:** ______________________________

**Its:** ______________________________

## EXHIBIT "A"
## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF KERN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCEL A:

PORTIONS OF PARCELS 1 AND 2 OF PARCEL MAP NO. 7502, IN THE CITY OF BAKERSFIELD, COUNTY OF KERN, STATE OF CALIFORNIA, AS PER MAP RECORDED SEPTEMBER 13, 1985 FILED IN BOOK 32 PAGE 91 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. SAID PARCEL BEING MORE PARTICULARLY DEFINED BY A CERTIFICATE OF COMPLIANCE, RECORDED APRIL 28, 1986, IN BOOK 5867 PAGE 553, OF OFFICIAL RECORDS, BEING DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID PARCEL 2; THENCE,

SOUTH 00° 52'47" WEST ALONG THE WEST LINE OF SAID PARCEL 2 AND ITS SOUTHERLY PROLONGATION, 180.205 FEET TO THE SOUTH LINE OF SAID PARCEL 2; THENCE,

SOUTH 89° 05' 56" EAST ALONG SAID SOUTH LINE. 312.05 FEET TO THE SOUTHEAST CORNER OF SAID PARCEL2; THENCE, ALONG THE EAST LINE OF SAID PARCEL 2.

NORTH 21° 59' 39" WEST 31.90 FEET; THENCE, CONTINUING ALONG SAID EAST LINE, NORTH 20° 56' 37" WEST 162.58 FEET TO THE NORTHEAST CORNER OF SAID PARCEL 2; THENCE, ALONG THE NORTH LINE OF SAID PARCEL 2,

NORTH 89°07' 13" WEST 239.21 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER SAID LAND, IN DEED TO THE STATE OF CALIFORNIA, RECORDED JANUARY 17, 1961, IN BOOK 3339 PAGE 299, OF OFFICIAL RECORDS.

PARCEL B:

RECIPROCAL NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS AND PARKING AS SHOWN AND DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS OF RODEWAY PLAZA, RECORDED SEPTEMBER 16, 1985, IN BOOK 5797 PAGE 911, OF OFFICIAL RECORDS.

APN: 020-110-23-00-5

# EXHIBIT "D"

BKR, LLC
Ramada by Wyndham
Profit & Loss Statement
As of 3/31/2026

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **SUMMARY** | | | | | |
| 2,480 | 2,480 | | 0 | 0 | Total Available Rooms | 7,200 | 7,200 | | 0 | 0 |
| 1,389 | 1,742 | | 353 | 0 | Rooms Rented | 4,025 | 4,355 | | 330 | 0 |
| 56.01% | 70.24% | | 14.23% | 0.00% | Occupancy | 55.90% | 60.49% | | 4.58% | 0.00% |
| 100.19 | 82.02 | | -18.17 | 0.00 | ADR | 102.93 | 90.96 | | -11.98 | 0.00 |
| 56.11 | 57.61 | | 1.50 | 0.00 | REVPAR | 57.54 | 55.02 | | -2.53 | 0.00 |
| | | | | | **Revenue** | | | | | |
| 139,163.91 | 142,879.52 | 96.60% | 3,715.61 | 119,615.58 | Room Revenue | 414,310.23 | 396,123.36 | 96.54% | (18,186.87) | 373,818.81 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Food Revenue | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Banquet Revenue | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Beverage Revenue | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 1.75 | Telephone Revenue | 0.00 | 0.00 | 0.00% | 0.00 | 1.75 |
| 2,916.90 | 5,033.27 | 3.40% | 2,116.37 | 4,489.01 | Other Operated Departments | 8,452.50 | 14,212.05 | 3.46% | 5,759.55 | 12,744.06 |
| 0.00 | (0.08) | (0.00%) | (0.08) | 0.00 | Rentals and Other Income | 0.00 | (0.08) | (0.00%) | (0.08) | 0.00 |
| **142,080.81** | **147,912.71** | **100.00%** | **5,831.90** | **124,106.34** | **Total Revenue** | **422,762.73** | **410,335.33** | **100.00%** | **-12,427.40** | **386,564.62** |
| | | | | | **Departmental Expenses** | | | | | |
| 41,685.62 | 63,084.12 | 42.65% | 21,398.50 | 14,176.24 | Room Expense | 121,106.01 | 172,804.04 | 42.11% | 51,698.03 | 46,088.33 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Food Expense | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Beverage Expense | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Banquet Expense | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 340.00 | 441.28 | 0.30% | 101.28 | 419.77 | Telephone Expense | 1,020.00 | 965.02 | 0.24% | (54.98) | 1,540.90 |
| 555.60 | (269.12) | (0.18%) | (824.72) | 0.00 | Other Operated Departments | 1,610.00 | (513.24) | (0.13%) | (2,123.24) | 0.00 |
| **42,581.22** | **63,256.28** | **42.77%** | **20,675.06** | **14,596.01** | **Total Departmental Expenses** | **123,736.01** | **173,255.82** | **42.22%** | **49,519.81** | **47,629.23** |
| **99,499.59** | **84,656.43** | **57.23%** | **-14,843.16** | **109,510.33** | **Total Departmental Income (Loss)** | **299,026.72** | **237,079.51** | **57.78%** | **-61,947.21** | **338,935.39** |
| | | | | | **Undistributed Operating Expense** | | | | | |
| 15,129.49 | 64,989.34 | 43.94% | 49,859.85 | 84,549.86 | Administrative and General | 44,934.06 | 111,420.32 | 27.15% | 66,486.26 | 270,243.37 |
| 2,147.18 | 2,008.28 | 1.36% | (138.90) | 110.00 | Sales and Marketing | 6,427.34 | 6,024.84 | 1.47% | (402.50) | 330.00 |
| 6,206.30 | 9,410.30 | 6.36% | 3,204.00 | 1,938.25 | Repairs & Maintenance | 18,547.90 | 20,405.69 | 4.97% | 1,857.79 | 13,503.85 |
| 11,806.50 | 12,534.59 | 8.47% | 728.09 | 8,571.22 | Energy | 34,212.50 | 36,119.88 | 8.80% | 1,907.38 | 28,933.16 |
| 6,597.75 | 12,144.76 | 8.21% | 5,547.01 | 12,514.68 | Franchise Fees | 19,118.75 | 34,777.42 | 8.48% | 15,658.67 | 49,686.26 |
| **41,887.22** | **101,087.27** | **68.34%** | **59,200.05** | **107,684.01** | **Total Undistributed Operating Expenses** | **123,240.55** | **208,748.15** | **50.87%** | **85,507.60** | **362,696.64** |
| **57,612.37** | **-16,430.84** | **-11.11%** | **-74,043.21** | **1,826.32** | **Gross Operating Profit** | **175,786.17** | **28,331.36** | **6.90%** | **-147,454.81** | **-23,761.25** |
| 5,683.23 | 5,916.52 | 4.00% | 233.29 | 0.00 | Management Fees | 16,910.51 | 17,413.42 | 4.24% | 502.91 | 3,000.00 |
| | | | | | **Fixed Charges** | | | | | |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Lease Expense | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 7,575.77 | 0.00 | 0.00% | (7,575.77) | 7,028.50 | Property and Other Taxes | 22,727.31 | 89,289.16 | 21.76% | 66,561.85 | 21,085.50 |
| 7,519.11 | 7,048.96 | 4.77% | (470.15) | 16,006.29 | Insurance | 22,507.63 | 19,996.02 | 4.87% | (2,511.61) | 45,783.85 |
| 32,000.00 | 0.00 | 0.00% | (32,000.00) | 31,015.18 | Interest | 96,000.00 | 2,027.68 | 0.49% | (93,972.32) | 91,876.21 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Rent Expense | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Automobile Expense | 0.00 | 0.00 | 0.00% | 0.00 | 1,400.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Capital Expense | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| **47,094.88** | **7,048.96** | **4.77%** | **-40,045.92** | **54,049.97** | **Total Fixed Charges** | **141,234.94** | **111,312.86** | **27.13%** | **-29,922.08** | **160,145.56** |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Corporate Donations | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Suspense | 0.00 | 0.00 | 0.00% | 0.00 | -116,362.46 |
| **4,834.26** | **-29,396.32** | **-19.87%** | **-34,230.58** | **-52,223.65** | **Net Operating Income Before Depreciation** | **17,640.72** | **-100,394.92** | **-24.47%** | **-118,035.64** | **-70,544.35** |
| 0.00 | 0.00 | 0.00% | 0.00 | 23,487.66 | Net Amortization/Depreciation | 0.00 | 0.00 | 0.00% | 0.00 | 70,462.98 |
| **4,834.26** | **-29,396.32** | **-19.87%** | **-34,230.58** | **-75,711.31** | **Net Income** | **17,640.72** | **-100,394.92** | **-24.47%** | **-118,035.64** | **-141,007.33** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Rooms Department** | | | | | |
| 2,480.00 | 2,480.00 | 1.68% | 0.00 | 0.00 | Total Available Rooms | 7,200.00 | 7,200.00 | 1.75% | 0.00 | 0.00 |
| 1,389.00 | 1,742.00 | 1.18% | 353.00 | 0.00 | Rooms Rented | 4,025.00 | 4,355.00 | 1.06% | 330.00 | 0.00 |
| 56.01% | 70.24% | 0.00% | 14.23% | 0.00% | Occupancy | 55.90% | 60.49% | 0.00% | 4.58% | 0.00% |
| 100.19 | 82.02 | 0.00 | -18.17 | 0.00 | ADR | 102.93 | 90.96 | 0.00 | -11.98 | 0.00 |
| 56.11 | 57.61 | 0.00 | 1.50 | 0.00 | REVPAR | 57.54 | 55.02 | 0.00 | -2.53 | 0.00 |
| | | | | | **Room Revenue** | | | | | |
| 139,163.91 | 0.00 | 0.00% | (139,163.91) | 0.00 | 100% GTD Contra Room | 414,310.23 | 0.00 | 0.00% | (414,310.23) | 0.00 |
| 0.00 | 1,284.72 | 0.87% | 1,284.72 | 0.00 | CONSORTIA | 0.00 | 4,807.34 | 1.17% | 4,807.34 | 0.00 |
| 0.00 | 7,911.45 | 5.35% | 7,911.45 | 0.00 | Discount - AAA | 0.00 | 22,294.87 | 5.43% | 22,294.87 | 0.00 |
| 0.00 | 20,375.27 | 13.78% | 20,375.27 | 0.00 | Reward Points Stays | 0.00 | 55,929.39 | 13.63% | 55,929.39 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Government | 0.00 | 287.00 | 0.07% | 287.00 | 0.00 |
| 0.00 | 74,234.72 | 50.19% | 74,234.72 | 0.00 | Internet NonOpaque | 0.00 | 201,642.83 | 49.14% | 201,642.83 | 0.00 |
| 0.00 | 3,568.00 | 2.41% | 3,568.00 | 0.00 | Internet - Opaque | 0.00 | 7,221.30 | 1.76% | 7,221.30 | 0.00 |
| 0.00 | 487.00 | 0.33% | 487.00 | 0.00 | LOCAL CORP - LRC | 0.00 | 13,064.39 | 3.18% | 13,064.39 | 0.00 |
| 0.00 | 6,325.29 | 4.28% | 6,325.29 | 0.00 | National Corp Acct | 0.00 | 14,143.65 | 3.45% | 14,143.65 | 0.00 |
| 0.00 | 23,947.00 | 16.19% | 23,947.00 | 0.00 | Non-Qualified Discount | 0.00 | 62,625.66 | 15.26% | 62,625.66 | 0.00 |
| 0.00 | 403.20 | 0.27% | 403.20 | 0.00 | Qualified Discount | 0.00 | 5,395.30 | 1.31% | 5,395.30 | 0.00 |
| 0.00 | 4,344.49 | 2.94% | 4,344.49 | 119,615.58 | Retail Non-Qualified | 0.00 | 6,742.37 | 1.64% | 6,742.37 | 373,818.81 |
| 0.00 | (3,095.62) | (2.09%) | (3,095.62) | 0.00 | Special Revenue | 0.00 | (7,157.98) | (1.74%) | (7,157.98) | 0.00 |
| **139,163.91** | **139,785.52** | **94.51%** | **621.61** | **119,615.58** | **Total Transient Revenue** | **414,310.23** | **386,996.12** | **94.31%** | **-27,314.11** | **373,818.81** |
| 0.00 | 3,094.00 | 2.09% | 3,094.00 | 0.00 | GRP-Sports | 0.00 | 9,127.24 | 2.22% | 9,127.24 | 0.00 |
| **0.00** | **3,094.00** | **2.09%** | **3,094.00** | **0.00** | **Total Group Revenue** | **0.00** | **9,127.24** | **2.22%** | **9,127.24** | **0.00** |
| **139,163.91** | **142,879.52** | **96.60%** | **3,715.61** | **119,615.58** | **Total Room Revenue** | **414,310.23** | **396,123.36** | **96.54%** | **-18,186.87** | **373,818.81** |
| | | | | | **Revenue By Length of Stay** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Revenue By Length of Stay** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Rooms Department** | | | | | |
| 2,480.00 | 2,480.00 | 1.68% | 0.00 | 0.00 | Total Available Rooms | 7,200.00 | 7,200.00 | 1.75% | 0.00 | 0.00 |
| 1,389.00 | 1,742.00 | 1.18% | 353.00 | 0.00 | Rooms Rented | 4,025.00 | 4,355.00 | 1.06% | 330.00 | 0.00 |
| 56.01% | 70.24% | 0.00% | 14.23% | 0.00% | Occupancy | 55.90% | 60.49% | 0.00% | 4.58% | 0.00% |
| 0.00 | 1.78 | 0.00 | 1.78 | 0.00 | ADR | 0.00 | 2.10 | 0.00 | 2.10 | 0.00 |
| 0.00 | 1.25 | 0.00 | 1.25 | 0.00 | REVPAR | 0.00 | 1.27 | 0.00 | 1.27 | 0.00 |
| **139,163.91** | **142,879.52** | **96.60%** | **3,715.61** | **119,615.58** | **Room Revenue** | **414,310.23** | **396,123.36** | **96.54%** | **-18,186.87** | **373,818.81** |
| | | | | | **Payroll & Benefits** | | | | | |
| 5,456.00 | 3,733.77 | 2.52% | (1,722.23) | 0.00 | Executive Housekeeping | 15,840.00 | 11,507.48 | 2.80% | (4,332.52) | 0.00 |
| 1,948.57 | 0.00 | 0.00% | (1,948.57) | 0.00 | Front Desk Supervisor | 5,657.14 | 0.00 | 0.00% | (5,657.14) | 0.00 |
| 4,216.00 | 11,888.03 | 8.04% | 7,672.03 | 0.00 | Front Office | 12,240.00 | 38,006.51 | 9.26% | 25,766.51 | 0.00 |
| 3,162.00 | 7,766.60 | 5.25% | 4,604.60 | 0.00 | Comp Breakfast Bar Host | 9,180.00 | 22,961.70 | 5.60% | 13,781.70 | 0.00 |
| 8,912.75 | 14,253.30 | 9.64% | 5,340.55 | 0.00 | Housekeeping Rooms | 25,827.08 | 34,987.16 | 8.53% | 9,160.08 | 0.00 |
| 3,968.00 | 0.00 | 0.00% | (3,968.00) | 0.00 | Night Audit | 11,520.00 | 0.00 | 0.00% | (11,520.00) | 0.00 |
| 2,489.70 | 0.00 | 0.00% | (2,489.70) | 0.00 | PR Taxes - Rooms | 7,223.78 | 0.00 | 0.00% | (7,223.78) | 0.00 |
| **30,153.02** | **37,641.70** | **25.45%** | **7,488.68** | **0.00** | **Total Rooms Payroll & Benefits** | **87,488.01** | **107,462.85** | **26.19%** | **19,974.84** | **0.00** |
| | | | | | **ROOMS OPERATING EXPENSES** | | | | | |
| 988.00 | 2,957.75 | 2.00% | 1,969.75 | 971.00 | Cable Television | 2,964.00 | 5,858.03 | 1.43% | 2,894.03 | 2,852.55 |
| 2,778.00 | 6,982.44 | 4.72% | 4,204.44 | 640.93 | Complimentary F&B | 8,050.00 | 13,977.82 | 3.41% | 5,927.82 | 2,270.10 |
| 0.00 | 0.00 | 0.00% | 0.00 | 4,885.96 | Complimentary F&B Supplies | 0.00 | 0.00 | 0.00% | 0.00 | 19,692.02 |
| 277.80 | 0.00 | 0.00% | (277.80) | 0.00 | Laundry Cleaning Supplies - Rooms | 805.00 | 929.02 | 0.23% | 124.02 | 151.63 |
| 340.00 | 1,645.25 | 1.11% | 1,305.25 | 69.77 | Free to Guest Internet | 1,020.00 | 4,543.81 | 1.11% | 3,523.81 | 1,138.32 |
| 833.40 | 3,037.68 | 2.05% | 2,204.28 | 1,677.20 | Guest Room Supplies | 2,415.00 | 7,619.27 | 1.86% | 5,204.27 | 4,995.55 |
| 277.80 | 0.00 | 0.00% | (277.80) | 0.00 | Linen Expense | 805.00 | 2,246.18 | 0.55% | 1,441.18 | 0.00 |
| 138.90 | 112.69 | 0.08% | (26.21) | 0.00 | Franchise Call Ctr. Reservations Fees | 402.50 | 414.21 | 0.10% | 11.71 | 0.00 |
| 138.90 | 0.00 | 0.00% | (138.90) | 0.00 | Supplies - Cleaning | 402.50 | 299.33 | 0.07% | (103.17) | 0.00 |
| 0.00 | 793.71 | 0.54% | 793.71 | 0.00 | Supplies - Other | 0.00 | 1,951.42 | 0.48% | 1,951.42 | 0.00 |
| 620.50 | 733.95 | 0.50% | 113.45 | 1,398.00 | Franchise System Fees | 1,861.50 | 2,173.97 | 0.53% | 312.47 | 3,562.10 |
| 4,167.00 | 7,502.23 | 5.07% | 3,335.23 | 4,598.86 | Travel Agent Commission | 12,075.00 | 19,106.28 | 4.66% | 7,031.28 | 9,310.38 |
| 486.15 | 566.18 | 0.38% | 80.03 | (65.48) | Franchise Frequent Traveler Fee | 1,408.75 | 2,794.34 | 0.68% | 1,385.59 | 2,115.68 |
| 347.25 | 1,110.54 | 0.75% | 763.29 | 0.00 | Global Distr./Processing Fee | 1,006.25 | 3,427.51 | 0.84% | 2,421.26 | 0.00 |
| 138.90 | 0.00 | 0.00% | (138.90) | 0.00 | Uniforms - Rooms | 402.50 | 0.00 | 0.00% | (402.50) | 0.00 |
| **11,532.60** | **25,442.42** | **17.20%** | **13,909.82** | **14,176.24** | **Total Rooms Other Expenses** | **33,618.00** | **65,341.19** | **15.92%** | **31,723.19** | **46,088.33** |
| **97,478.29** | **79,795.40** | **53.95%** | **-17,682.89** | **105,439.34** | **Rooms Department Income (Loss)** | **293,204.22** | **223,319.32** | **54.42%** | **-69,884.90** | **327,730.48** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Food & Beverage Department** | | | | | |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Restaurant Revenue | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Lounge Revenue | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Banquet Revenue | 0.00 | 0.00 | 0.00% | 0.00 | 0.00 |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Food & Beverage Revenue** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Cost of Food & Beverage Sales** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Cost of Food & Beverage Sales** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Gross Profit (Loss) F&B** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Restaurant Payroll & Benefits** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Restaurant Payroll & Benefits** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Beverage Payroll & Expenses** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Beverage Payroll & Benefits** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Banquet Payroll & Benefits** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Banquet Payroll & Benefits** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Food & Bev. Payroll & Benefits** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Restaurant & Beverage Other Expenses** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Restaurant & Bev. Other Expenses** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Banquet Other Expenses** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Banquet Other Expenses** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Cost of Banquet Sales** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Cost of Banquet Sales** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Food & Beverage Other Expenses** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Food, Banquet & Beverage Net Income (Loss)** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Restaurant Revenue** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Restaurant Revenue** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Lounge Revenue** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Lounge Revenue** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Banquet Revenue** | | | | | |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Banquet Revenue** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Restaurant, Bev. & Banquet Revenue** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Telephone Department** | | | | | |
| | | | | | **Departmental Revenue** | | | | | |
| 0.00 | 0.00 | 0.00% | 0.00 | 1.75 | Long Distance Revenue | 0.00 | 0.00 | 0.00% | 0.00 | 1.75 |
| **0.00** | **0.00** | **0.00%** | **0.00** | **1.75** | **Total Telephone Revenue** | **0.00** | **0.00** | **0.00%** | **0.00** | **1.75** |
| | | | | | **Telephone Department Expenses** | | | | | |
| 340.00 | 441.28 | 0.30% | 101.28 | 419.77 | Telecommunications - A&G | 1,020.00 | 965.02 | 0.24% | (54.98) | 1,540.90 |
| **-340.00** | **-441.28** | **-0.30%** | **-101.28** | **-418.02** | **Telephone Department Income** | **-1,020.00** | **-965.02** | **-0.24%** | **54.98** | **-1,539.15** |
| | | | | | **Other Operated Departments** | | | | | |
| | | | | | **Other Operated Department Revenue** | | | | | |
| 138.90 | 0.00 | 0.00% | (138.90) | 0.00 | Guest Laundry - Income | 402.50 | 0.00 | 0.00% | (402.50) | 0.00 |
| 1,389.00 | 0.00 | 0.00% | (1,389.00) | 251.42 | Gift Shop Income | 4,025.00 | 0.00 | 0.00% | (4,025.00) | 875.37 |
| 1,389.00 | 5,033.27 | 3.40% | 3,644.27 | 4,237.59 | Other Revenue - PMS | 4,025.00 | 14,212.05 | 3.46% | 10,187.05 | 11,868.69 |
| **2,916.90** | **5,033.27** | **3.40%** | **2,116.37** | **4,489.01** | **Total Other Operated Income** | **8,452.50** | **14,212.05** | **3.46%** | **5,759.55** | **12,744.06** |
| | | | | | **Other Operated Department Expenses** | | | | | |
| 555.60 | (269.12) | (0.18%) | (824.72) | 0.00 | Cost of Gift Shop | 1,610.00 | (513.24) | (0.13%) | (2,123.24) | 0.00 |
| **555.60** | **-269.12** | **-0.18%** | **-824.72** | **0.00** | **Total Other Operated Dept. Expenses** | **1,610.00** | **-513.24** | **-0.13%** | **-2,123.24** | **0.00** |
| **2,361.30** | **5,302.39** | **3.58%** | **2,941.09** | **4,489.01** | **Total Other Operated Dept. Income (Loss)** | **6,842.50** | **14,725.29** | **3.59%** | **7,882.79** | **12,744.06** |
| | | | | | **Other Income** | | | | | |
| 0.00 | 0.03 | 0.00% | 0.03 | 0.00 | Bank Interest | 0.00 | 0.03 | 0.00% | 0.03 | 0.00 |
| 0.00 | (0.11) | (0.00%) | (0.11) | 0.00 | Other Revenue - Non PMS | 0.00 | (0.11) | (0.00%) | (0.11) | 0.00 |
| **0.00** | **-0.08** | **0.00%** | **-0.08** | **0.00** | **Total Miscellaneous Income** | **0.00** | **-0.08** | **0.00%** | **-0.08** | **0.00** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Administrative & General Department** | | | | | |
| | | | | | **A&G Payroll & Benefits** | | | | | |
| 6,933.58 | 0.00 | 0.00% | (6,933.58) | 0.00 | Administrative | 20,800.75 | 0.00 | 0.00% | (20,800.75) | 0.00 |
| 0.00 | 7,014.74 | 4.74% | 7,014.74 | 0.00 | Administrative Assistant | 0.00 | 20,881.94 | 5.09% | 20,881.94 | 0.00 |
| 0.00 | (827.49) | (0.56%) | (827.49) | 0.00 | Other A & G | 0.00 | (1,619.37) | (0.39%) | (1,619.37) | 0.00 |
| 624.02 | 4,236.76 | 2.86% | 3,612.74 | 0.00 | PR Taxes - A&G | 1,872.07 | 14,301.92 | 3.49% | 12,429.85 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 3,707.24 | Insurance - A&G | 0.00 | 4,716.45 | 1.15% | 4,716.45 | 10,029.80 |
| **7,557.61** | **10,424.01** | **7.05%** | **2,866.40** | **3,707.24** | **Total A&G Payroll & Benefits** | **22,672.82** | **38,280.94** | **9.33%** | **15,608.12** | **10,029.80** |
| | | | | | **A&G Expenses** | | | | | |
| 850.00 | 455.00 | 0.31% | (395.00) | 0.00 | Accounting Systems | 2,550.00 | 2,565.00 | 0.63% | 15.00 | 0.00 |
| 500.00 | 500.00 | 0.34% | 0.00 | 7,361.12 | Accounting/Accounting Services | 1,500.00 | 1,500.00 | 0.37% | 0.00 | 27,172.24 |
| 1,000.00 | 401.00 | 0.27% | (599.00) | 5,635.96 | Bank Charges | 3,000.00 | 709.50 | 0.17% | (2,290.50) | 12,213.57 |
| 0.00 | 535.75 | 0.36% | 535.75 | 0.00 | Cash Over/Short | 0.00 | (16,175.45) | (3.94%) | (16,175.45) | 0.00 |
| 0.00 | 287.23 | 0.19% | 287.23 | 0.00 | Charge Backs | 0.00 | 609.63 | 0.15% | 609.63 | 0.00 |
| 3,125.25 | 3,928.26 | 2.66% | 803.01 | 3,239.47 | Credit Card Fees - Rooms | 9,056.25 | 10,285.45 | 2.51% | 1,229.20 | 12,621.76 |
| 69.45 | 1,297.16 | 0.88% | 1,227.71 | 0.00 | Dues & Subscriptions - A&G | 201.25 | 2,482.16 | 0.60% | 2,280.91 | 0.00 |
| 677.08 | 677.08 | 0.46% | 0.00 | 0.00 | EMP Recruiting / REL | 2,031.24 | 2,031.24 | 0.50% | 0.00 | 0.00 |
| 0.00 | 10,000.00 | 6.76% | 10,000.00 | 50.75 | Fees - Legal | 0.00 | 10,000.00 | 2.44% | 10,000.00 | 50.75 |
| 0.00 | 30,000.00 | 20.28% | 30,000.00 | 0.00 | Fees - Professional | 0.00 | 41,500.00 | 10.11% | 41,500.00 | 0.00 |
| 1,041.75 | 0.00 | 0.00% | (1,041.75) | 1,056.00 | Information Systems | 3,018.75 | 0.00 | 0.00% | (3,018.75) | 3,821.92 |
| 100.00 | 225.00 | 0.15% | 125.00 | 235.00 | License & Permits - A&G | 300.00 | 562.50 | 0.14% | 262.50 | 22,792.65 |
| 0.00 | 376.58 | 0.25% | 376.58 | 242.14 | Office Supplies | 0.00 | 675.78 | 0.16% | 675.78 | 646.15 |
| 0.00 | 5,882.27 | 3.98% | 5,882.27 | 0.00 | Payroll Processing | 0.00 | 16,393.57 | 4.00% | 16,393.57 | 0.00 |
| 69.45 | 0.00 | 0.00% | (69.45) | 5.58 | Postage - A&G | 201.25 | 0.00 | 0.00% | (201.25) | 23.92 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Printing & Stationary - A&G | 0.00 | 0.00 | 0.00% | 0.00 | 147.30 |
| 0.00 | 0.00 | 0.00% | 0.00 | 62,602.20 | Shared Payroll Expense | 0.00 | 0.00 | 0.00% | 0.00 | 178,777.30 |
| 138.90 | 0.00 | 0.00% | (138.90) | 414.40 | Travel & Meals - A&G | 402.50 | 0.00 | 0.00% | (402.50) | 1,946.01 |
| **7,571.88** | **54,565.33** | **36.89%** | **46,993.45** | **80,842.62** | **Total A&G Other Expenses** | **22,261.24** | **73,139.38** | **17.82%** | **50,878.14** | **260,213.57** |
| **15,129.49** | **64,989.34** | **43.94%** | **49,859.85** | **84,549.86** | **Total A&G Expenses** | **44,934.06** | **111,420.32** | **27.15%** | **66,486.26** | **270,243.37** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Sales & Marketing Department** | | | | | |
| | | | | | **Sales & Marketing Payroll & Benefits** | | | | | |
| 0.00 | 0.00 | 0.00% | (0.00) | 0.00 | Sales & Marketing Management | 0.00 | 0.00 | 0.00% | (0.00) | 0.00 |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Sales/Market Payroll** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| | | | | | **Sales & Marketing Other Expenses** | | | | | |
| 625.00 | 625.00 | 0.42% | 0.00 | 0.00 | Contract Labor - Sales | 1,875.00 | 1,875.00 | 0.46% | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 110.00 | Dues & Subscription - Sales | 0.00 | 0.00 | 0.00% | 0.00 | 330.00 |
| 138.90 | 0.00 | 0.00% | (138.90) | 0.00 | E-Commerce | 402.50 | 0.00 | 0.00% | (402.50) | 0.00 |
| 500.00 | 500.00 | 0.34% | 0.00 | 0.00 | Revenue Management | 1,500.00 | 1,500.00 | 0.37% | 0.00 | 0.00 |
| 883.28 | 883.28 | 0.60% | 0.00 | 0.00 | Shared Payroll Expense - Sales | 2,649.84 | 2,649.84 | 0.65% | 0.00 | 0.00 |
| **2,147.18** | **2,008.28** | **1.36%** | **-138.90** | **110.00** | **Total Sales & Marketing Other Expenses** | **6,427.34** | **6,024.84** | **1.47%** | **-402.50** | **330.00** |
| **2,147.18** | **2,008.28** | **1.36%** | **-138.90** | **110.00** | **Total Sales & Marketing Expense** | **6,427.34** | **6,024.84** | **1.47%** | **-402.50** | **330.00** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Maintenance Department** | | | | | |
| | | | | | **Maintenance Dept. Payroll & Benefits** | | | | | |
| 3,520.00 | 3,128.00 | 2.11% | (392.00) | 0.00 | Maintenance Management | 10,560.00 | 4,827.93 | 1.18% | (5,732.07) | 0.00 |
| 316.80 | 0.00 | 0.00% | (316.80) | 0.00 | PR Taxes - Maintenance | 950.40 | 0.00 | 0.00% | (950.40) | 0.00 |
| **3,836.80** | **3,128.00** | **2.11%** | **-708.80** | **0.00** | **Total Maintenance Payroll & Benefits** | **11,510.40** | **4,827.93** | **1.18%** | **-6,682.47** | **0.00** |
| | | | | | **Maintenance Other Expenses** | | | | | |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Building Repair | 0.00 | 0.00 | 0.00% | 0.00 | 559.36 |
| 694.50 | 279.29 | 0.19% | (415.21) | 530.49 | Building Supplies | 2,012.50 | 4,443.64 | 1.08% | 2,431.14 | 1,452.16 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Electrical & Mechanical | 0.00 | 0.00 | 0.00% | 0.00 | (763.38) |
| 415.00 | 0.00 | 0.00% | (415.00) | 0.00 | Elevator | 1,245.00 | 1,144.77 | 0.28% | (100.23) | 5,160.65 |
| 0.00 | 396.00 | 0.27% | 396.00 | 360.00 | Equipment Rental | 0.00 | 1,146.00 | 0.28% | 1,146.00 | 2,981.24 |
| 60.00 | 105.00 | 0.07% | 45.00 | 105.00 | Fire & Safety | 180.00 | 210.00 | 0.05% | 30.00 | 315.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Furniture & Fixtures | 0.00 | 0.00 | 0.00% | 0.00 | 106.05 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | HVAC | 0.00 | 594.29 | 0.14% | 594.29 | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Keys & Locks | 0.00 | 68.83 | 0.02% | 68.83 | 0.00 |
| 300.00 | 4,600.00 | 3.11% | 4,300.00 | 0.00 | Landscaping | 900.00 | 4,600.00 | 1.12% | 3,700.00 | 37.71 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Laundry & Equipment Repair | 0.00 | 700.76 | 0.17% | 700.76 | 0.00 |
| 150.00 | 0.00 | 0.00% | (150.00) | 0.00 | Pest Control | 450.00 | 0.00 | 0.00% | (450.00) | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Plumbing Maintenance | 0.00 | 72.69 | 0.02% | 72.69 | 0.00 |
| 0.00 | 124.48 | 0.08% | 124.48 | 192.95 | Pool Maintenance | 0.00 | 232.48 | 0.06% | 232.48 | 616.55 |
| 750.00 | 777.53 | 0.53% | 27.53 | 749.81 | Trash Removal | 2,250.00 | 2,364.30 | 0.58% | 114.30 | 3,038.51 |
| **2,369.50** | **6,282.30** | **4.25%** | **3,912.80** | **1,938.25** | **Total Maintenance Other Expenses** | **7,037.50** | **15,577.76** | **3.80%** | **8,540.26** | **13,503.85** |
| **6,206.30** | **9,410.30** | **6.36%** | **3,204.00** | **1,938.25** | **Total Maintenance Expense** | **18,547.90** | **20,405.69** | **4.97%** | **1,857.79** | **13,503.85** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Utilities** | | | | | |
| 8,334.00 | 6,687.44 | 4.52% | (1,646.56) | 5,177.93 | Electricity | 24,150.00 | 23,495.46 | 5.73% | (654.54) | 16,584.38 |
| 1,389.00 | 3,928.61 | 2.66% | 2,539.61 | 1,624.19 | Gas | 4,025.00 | 6,285.88 | 1.53% | 2,260.88 | 4,583.53 |
| 1,041.75 | 959.27 | 0.65% | (82.48) | 0.00 | Sewer | 3,018.75 | 3,169.27 | 0.77% | 150.52 | 0.00 |
| 1,041.75 | 959.27 | 0.65% | (82.48) | 1,769.10 | Water | 3,018.75 | 3,169.27 | 0.77% | 150.52 | 7,765.25 |
| **11,806.50** | **12,534.59** | **8.47%** | **728.09** | **8,571.22** | **Total Utilities** | **34,212.50** | **36,119.88** | **8.80%** | **1,907.38** | **28,933.16** |
| | | | | | **Franchise Fees** | | | | | |
| 1,805.70 | 5,715.18 | 3.86% | 3,909.48 | 6,517.63 | Franchise Marketing Fees | 5,232.50 | 15,174.39 | 3.70% | 9,941.89 | 27,310.72 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Meeting/Owners Fees | 0.00 | 420.00 | 0.10% | 420.00 | 0.00 |
| 4,792.05 | 6,429.58 | 4.35% | 1,637.53 | 5,997.05 | Royalty Fees | 13,886.25 | 19,183.03 | 4.67% | 5,296.78 | 22,375.54 |
| **6,597.75** | **12,144.76** | **8.21%** | **5,547.01** | **12,514.68** | **Total Franchise Fees** | **19,118.75** | **34,777.42** | **8.48%** | **15,658.67** | **49,686.26** |
| | | | | | **Management Fees** | | | | | |
| 5,683.23 | 5,916.52 | 4.00% | 233.29 | 0.00 | Basic Management Fees | 16,910.51 | 16,413.42 | 4.00% | (497.09) | 0.00 |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Asset Management Fee | 0.00 | 1,000.00 | 0.24% | 1,000.00 | 3,000.00 |
| **5,683.23** | **5,916.52** | **4.00%** | **233.29** | **0.00** | **Total Management Fees** | **16,910.51** | **17,413.42** | **4.24%** | **502.91** | **3,000.00** |
| | | | | | **Fixed Costs** | | | | | |
| 7,028.50 | 0.00 | 0.00% | (7,028.50) | 7,028.50 | County Property Taxes | 21,085.50 | 89,289.16 | 21.76% | 68,203.66 | 21,085.50 |
| 547.27 | 0.00 | 0.00% | (547.27) | 0.00 | Personal Property Taxes | 1,641.81 | 0.00 | 0.00% | (1,641.81) | 0.00 |
| **7,575.77** | **0.00** | **0.00%** | **-7,575.77** | **7,028.50** | **Total Property Tax and Lease Expense** | **22,727.31** | **89,289.16** | **21.76%** | **66,561.85** | **21,085.50** |
| 1,684.68 | 1,685.68 | 1.14% | 1.00 | 0.00 | Umbrella Insurance | 5,054.04 | 3,371.36 | 0.82% | (1,682.68) | 0.00 |
| 5,348.28 | 5,363.28 | 3.63% | 15.00 | 11,598.01 | General Liability Insurance | 16,044.84 | 16,624.66 | 4.05% | 579.82 | 36,812.84 |
| 486.15 | 0.00 | 0.00% | (486.15) | 4,145.08 | Worker's Compensation | 1,408.75 | 0.00 | 0.00% | (1,408.75) | 8,181.41 |
| 0.00 | 0.00 | | 0.00 | 263.20 | Cyber Insurance | 0.00 | 0.00 | | 0.00 | 789.60 |
| **7,519.11** | **7,048.96** | **4.77%** | **-470.15** | **16,006.29** | **Total Insurance Cost** | **22,507.63** | **19,996.02** | **4.87%** | **-2,511.61** | **45,783.85** |
| 32,000.00 | 0.00 | 0.00% | (32,000.00) | 31,015.18 | Interest 1st Mortgage | 96,000.00 | 0.00 | 0.00% | (96,000.00) | 91,876.21 |
| 0.00 | 0.00 | | 0.00 | 0.00 | Finance Charge Expense | 0.00 | 2,027.68 | | 2,027.68 | 0.00 |
| **32,000.00** | **0.00** | **0.00%** | **-32,000.00** | **31,015.18** | **TOTAL MORTGAGE INTEREST** | **96,000.00** | **2,027.68** | **0.49%** | **-93,972.32** | **91,876.21** |
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Automobile Insurance Expense | 0.00 | 0.00 | 0.00% | 0.00 | 1,400.00 |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **Total Automobile Expense** | **0.00** | **0.00** | **0.00%** | **0.00** | **1,400.00** |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **TOTAL CAPITAL EXPENDITURES** | **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** |
| **47,094.88** | **7,048.96** | **4.77%** | **-40,045.92** | **54,049.97** | **TOTAL FIXED COST** | **141,234.94** | **111,312.86** | **27.13%** | **-29,922.08** | **158,745.56** |
| 0.00 | 0.00 | 0.00% | 0.00 | 764.41 | Amortization Expense | 0.00 | 0.00 | 0.00% | 0.00 | 2,293.23 |
| 0.00 | 0.00 | 0.00% | 0.00 | 22,723.25 | Depreciation Expense | 0.00 | 0.00 | 0.00% | 0.00 | 68,169.75 |
| **0.00** | **0.00** | **0.00%** | **0.00** | **23,487.66** | **NET AMORTIZATION/DEPRECIATION** | **0.00** | **0.00** | **0.00%** | **0.00** | **70,462.98** |

| PTD Budget | PTD Actual | % | Variance | PTD Last Year | Item | YTD Budget | YTD Actual | % | Variance | YTD Last Year |
|---|---|---|---|---|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00% | 0.00 | 0.00 | Suspense | 0.00 | 0.00 | 0.00% | 0.00 | (116,362.46) |
| **0.00** | **0.00** | **0.00%** | **0.00** | **0.00** | **TOTAL SUSPENSE** | **0.00** | **0.00** | **0.00%** | **0.00** | **-116,362.46** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled (*specify*): EMERGENCY MOTION FOR AUTHORITY TO CASH COLLATERAL ON AN INTERIM BASIS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF JAMES FAIR AND MICHAEL CRANE IN SUPPORT THEREOF

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 05/06/2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 05/06/2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 05/06/2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor's principal via email- not listed for privacy reasons

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/06/2026 | Gabriela Hansen | /s/ Gabriela Hansen |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) [CONTINUED]**:

- **Counsel for UST: Russell Clementson** russell.clementson@usdoj.gov
- **Counsel for Debtor:** Matthew D. Resnik matt@rhmfirm.com, roksana@rhmfirm.com; russ@rhmfirm.com; sloan@rhmfirm.com; susie@rhmfirm.com; priscilla@rhmfirm.com; rebeca@rhmfirm.com; rosario@rhmfirm.com; gabriela@rhmfirm.com; lesley@rhmfirm.com
- **United States Trustee (SV)** ustpregion16.wh.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL:**

ALL SECURED CREDITORS (OTHER THAN THOSE SERVED VIA NEF):

AmPac Tri-State CDC, Inc.
dba AmPac Business Capital
22365 Barton Road, Suite 304
Grand Terrace, CA 92313

City of Bakersfield
Transient Occupancy Tax
8839 N. Cedar Ave., #212
Fresno, CA 93720

Kern County Treasurer-Tax Collector
1115 Truxtun Ave. 2nd FL
Bakersfield, CA 93301

New Omni Bank, N.A.
Real Estate Department
1235 South Garfield Ave.
Alhambra, CA 91801

ALL PRIORITY CREDITORS OF THE ESTATE:

Alfonso Bejines
3705 Chive CT
Bakersfield, CA 93309

Alma Martinez
380 Pacheco Rd 514e
Bakersfield, CA 93307

Alma Montes
828 Real Road
Bakersfield, CA 93309

California Dept. of Tax and Fee
Special Procedures Section
MIC: 29
P.O. Box 942879
Sacramento, CA 94279

Calyn Knowles
305 Holtby Road
Bakersfield, CA 93304

Candice Shroyer
510 Real Road 5
Bakersfield, CA 93309

Emilio Ramirez
3708 Loma Vista Dt
Bakersfield, CA 93309

Employment Development Dept.
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Irma Hernandez
329 S Real Rd
Bakersfield, CA 93309

Julie Romo
12105 Timberpointe Dr
Bakersfield, CA 93312

Kassey Botello
422 Washington Avenue
Bakersfield, CA 93308

Lilia Trinidad
1101 P Street
Bakersfield, CA 93304

Maritza Bejines
3705 Chive Ct
Bakersfield, CA 93309

Megan Page
5501 Pine Springs Way
Bakersfield, CA 93313

Mercedes Caldera
310 Hughes Lane
Bakersfield, CA 93304

Rosaura Arias Castro
701 Planz Road
Bakersfield, CA 93304

Yolanda Ortega
717 Tanner St
Bakersfield, CA 93307

ALL REMAINING CREDITORS OF THE ESTATE + PARTIES FOR NOTICE:

ABD Office Solutions
180 Vander Street
Corona, CA 92878

Angela Pablico
1160 Benecia Ct
Chula Vista, CA 91913-1701

B.I.T.S
14661 Binney Street
Hacienda Heights, CA 91745

B.I.T.S. IT Solutions
1370 Valley Vista Dr. Ste 200
Diamond Bar, CA 91765

Booking.com
PO BOX 740401
Los Angeles, CA 90074-0401

CA Travel & Tourism
Office of Tourism
555 Capitol Mall, Suite 465
Sacramento, CA 95814

California Choice Health
Insurance
721 South Parker, Suite 140
Orange, CA 92868

California Water Service
3725 South H St.
Bakersfield, CA 93304

City of Bakersfield
c/o Duane Morris LLP
Colin Pearce/David Goldstein
One Market Plaza, Spear
Tower #2200
San Francisco, CA 94105

City Of Bakersfield-Waste
Removal
PO BOX 2057
Bakersfield, CA 93303

Commtrak
PO Box 826077
Philadelphia, PA 19182

Day Use
1200 Brickell Ave. Ste 1960
Miami, FL 33131

Direct TV
PO Box 5006
Carol Stream, IL 60197

Expedia
PO BOX 847677
Dallas, TX 75284-7677

First Insurance Funding
450 Skokie Blvd, Ste 1000
Northbrook, IL 60062

Golden Malted
PO Box 24316
New York, NY 10087

HD Supply Solutions
PO Box 509058
San Diego, CA 92150

HSP Hotels LLC
16350 Ventura Blvd., D523
Encino, CA 91436

Insurance Company of the
West
c/o Gascou Hopkins LLP
9696 Culver Blvd., Suite 301
Culver City, CA 90232

Jesslyn Smith
c/o H&A Law Office, PC
5959 Topanga Cyn Blvd.,
Suite 340
Woodland Hills, CA 91367

JL Services
9605 S. Main St.
Los Angeles, CA 90003

JL Services
9605 S. Main Street
Los Angeles, CA 90003

Jorgensen Company
3243 S. Willow Ave.
Fresno, CA 93725

Jorgensen Company
2345 So. Fruitvale Ave., Bay1
Bakersfield, CA 93308

Just In Time Communications
Inc.
3400 Inland Empire Blvd. Ste
101
Ontario, CA 91764

Kern County Public Health
Dept.
2700 M St. Ste 300
Bakersfield, CA 93301

Kone
1 Kone Court
Moline, IL 61265

Luminous Hotel Management,
LLC
410 Holiday Ct.
Warrenton, VA 20186

M3 Accounting
PO BOX 96539
Charlotte, NC 02829-6053

Michael Sullivan & Associates
LLP
File 1682
1801 W. Olympic Blvd
Pasadena, CA 91199-1682

Netchex
1155 Hwy 190 East Service
Rd. #2
Covington, LA 70433

NVA LLC
16350 Ventura Blvd., D523
Encino, CA 91436

PG&E
PO Box 997300
Sacramento, CA 95899

Ramada Worldwide
15018 Collections Center
Drive
Chicago, IL 60693

Ramada Worldwide Inc.
22 Sylvan Way
Parsippany, NJ 07054-0278

Reeco
1111 Brickell Avenue
Miami, FL 33131

SoCal Gas
PO BOX C

Monterey Park, CA 91756-
5111

Spectrum Enterprise
PO Box 223085
Pittsburgh, PA 15251

Springfield Tramp
16350 Ventura Blvd., D523
Encino, CA 91436

SRS Communications, Inc.
1442 E. Lincoln Ave. Ste 221
Orange, CA 92865

Tel-Tec Security Systems
5020 Lisa Marie Ct.
Bakersfield, CA 93313

Tel-Tec Security Systems Inc.
5020 Lisa Marie Court
Bakersfield, CA 93313

The Cane Family Trust
16350 Ventura Blvd., D523
Encino, CA 91436

Timothy R. Crane
16350 Ventura Blvd., D523
Encino, CA 91436

Tramp Properties
16350 Ventura Blvd., D523
Encino, CA 91436

U.S. Small Business
Administration
Office of General Counsel
312 N. Spring St., 5th FL
Los Angeles, CA 90012

US Foods
File 6993
Los Angeles, CA 90074

Wells Fargo
P.O. Box 77033
Minneapolis, MN 55480-7733

Western NRG
4034 Adolfo Rd.
Camarillo, CA 93012

Winthrop Golubox Hollander
1301 Dove Street, Suite 500
Newport Beach, CA 92660